**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CAROL ANN AGSTER, personal )
representative of the Estate of CHARLES )
J. AGSTER, III, deceased; CHARLES J. )
AGSTER, JR., and CAROL ANN )
AGSTER, surviving parents of CHARLES )
J. AGSTER, III, )
                                       )
            Plaintiffs, )
                                       )
vs. )
                                       )
                                       )
MARICOPA COUNTY, a public entity; et )
al. )
            Defendants. )
_____)

No. CV-02-1686-PHX-JAT


**ORDER**

Pending before the Court are Plaintiffs' Motion for Attorneys Fees and Non-Taxable Costs (Doc. #662) and Second Motion for Attorneys Fees (Doc. #791), Maricopa County and the Maricopa Sheriff Defendants' Motion to Strike Second Motion for Attorneys Fees (Doc. #796), and Defendants Maricopa County and Maricopa County Correctional Health's (MCCH's) Motion to Strike Second Motion for Attorneys Fees (Doc. #797). The Court now rules on the motions.

## I.    FACTUAL AND PROCEDURAL HISTORY

On August 6, 2001, Charles Agster was brought into the Madison Street Jail by City of Phoenix police officers. Mr. Agster was taken to the Phoenix room within the jail. Defendant Lewis, who is a nurse, was called to look at Mr. Agster. Defendant Lewis cleaned

and assessed a wound over Mr. Agster's eye.  Defendant Lewis then began a pre-booking assessment form while still in the Phoenix room.

The parties dispute exactly how Mr. Agster behaved while in the Phoenix room.  But they do not dispute that Mr. Agster was not completely cooperative with Defendant Lewis and the officers.  After a period of time in the Phoenix room, during which Mr. Agster was uncooperative, Defendant Lewis ordered the officers to place Mr. Agster in the restraint chair.  Officers carried out this order and placed Mr. Agster in the restraint chair.  Defendant Lewis was not present at the time the officers placed Mr. Agster in the chair.

At some point after his placement in the chair, Mr. Agster began exhibiting signs of distress.  Several officers observed this distress and reported their observations to Defendant Lewis.  Defendant Lewis examined Mr. Agster and ultimately determined he needed emergency medical assistance.  Mr. Agster did not recover from his distress.  During this entire incident, Mr. Agster had methamphetamine in his system.

The parents of Mr. Agster and Mr. Agster's Estate filed suit against Maricopa County, the Maricopa County Sheriffs Office, Sheriff Arpaio, the individual officers, Maricopa County Correctional Health Services, and Nurse Betty Lewis.  On March 29, 2006, after weeks of trial, the Clerk of the Court entered judgment in the case on the jury verdicts (Doc.#657).  The jury found for Plaintiff Estate of Charles Agster, III, against all Defendants on the federal civil rights claims and awarded the Estate $6,000,000.00 in compensatory damages and $2,000,000.00 in punitive damages.  The jury found for Defendants on Mr and Mrs. Agster's federal civil rights claims.  On the state claims, the jury found for Mrs. and Mr. Agster.  The jury awarded $1,000,000.00 to Mrs. Agster in compensatory damages and $1,000,000.00 to Mr. Agster in compensatory damages.  The amounts of the state claim verdicts were reduced by half because of comparative fault.  The Court later entered an Amended Judgment (Doc. #811) reducing the Estate's compensatory damages on the federal civil rights claims from $6,000,000.00 to $1,000,009.00.

## II.    FIRST MOTION FOR ATTORNEYS FEES' AND NON-TAXABLE EXPENSES

1   Defendants do not dispute that Plaintiffs prevailed at trial and should recover their
2   reasonable attorneys' fees, but Defendants object to the amount of fees requested.
3   Defendants urge the Court to reduce the number of requested hours and lower the requested
4   hourly rates to arrive at the lodestar amount. Defendants argue the Court then should reduce
5   the lodestar amount by certain percentages for various reasons. Defendants also dispute the
6   amount of non-taxable expenses claimed by Plaintiffs.

7   ### A.   Legal Standard

8   A prevailing plaintiff in a federal civil rights case should recover its attorneys' fees
9   unless special circumstances would make an award of fees unjust. *Hensley v. Eckerhart*, 461
10  U.S. 424, 429 (1983). The prevailing plaintiff bears the burden of establishing entitlement
11  to an award and must document the appropriate hours expended and hourly rates. *Id*. at 437.
12  The plaintiff should make a good faith effort to exclude excessive, redundant, or otherwise
13  unnecessary hours from a fee request. *Id*. at 434.

14  The Ninth Circuit customarily uses the "lodestar" method to determine the permissible
15  amount of attorneys' fees under 42 U.S.C. §1988. *Ballen v. City of Redmond*, 466 F.3d 736,
16  746 (9th Cir. 2006). The lodestar method multiplies the number of hours the prevailing party
17  reasonably expended on the case by a reasonable hourly rate. *Id*. The lodestar figure is "the
18  presumptively accurate measure of reasonable attorneys fees." *Id*. The Court may adjust that
19  figure upward or downward after considering the following factors:

20  (1) the time and labor required, (2) the novelty and difficulty of
    the questions involved, (3) the skill requisite to perform the legal
21  service properly, (4) the preclusion of other employment by the
    attorney due to acceptance of the case, (5) the customary fee, (6)
22  whether the fee is fixed or contingent,[1] (7) time limitations
    imposed by the client or the circumstances, (8) the amount
23  involved and the results obtained, (9) the experience, reputation,
    and ability of the attorneys, (10) the 'undesirability' of the case,
24  (11) the nature and length of the professional relationship with
    the client, and (12) awards in similar cases.

25

26

27  [1]Plaintiffs do not seek an upward adjustment of the lodestar based on their
    contingency fee arrangement. The Ninth Circuit has held such an upward adjustment
28  impermissible. *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993).

1   *Id.*

2   **B.   Attorneys' Fees**

3       The Court commends Plaintiffs' counsel for doing an exemplary job on the fee

4   application.  Likewise, Defendants' counsel have done an exemplary job of presenting their

5   objections to the application.  Defendants' counsel utilizes a very "user friendly" method of

6   challenging the fees.  They have highlighted each of the challenged time entries with one of

7   eight colors.  Each color represents a category of fees Defendants argue the Court should

8   reject.  Defendants have also proposed a total dollar amount for each category by which to

9   reduce the fee award.  Defendants' color codes, categories, and suggested dollar reductions

10  are: (1) Yellow - Entries showing duplication of efforts = $449,255.60; (2) Blue - Entries for

11  which not enough detail given to determine reasonableness = $356,837.00; (3) Pink - Entries

12  indicating attorneys or paralegals performed secretarial or clerical duties = $47,144.25; (4)

13  Green - Entries relating to other cases = $256,226.30; (5) Orange - Fees and costs related to

14  claims upon which Plaintiffs did not prevail = $9,717.00; (6) Purple - Excessive billing =

15  $542,152; (7) Brown - Fees associated with experts that Plaintiffs did not retain = $1,445.50;

16  and (8) Red underlined - Catch-all, including irrelevant or non-billable time (e.g. speaking

17  with the media, soliciting charitable donations, etc.) = $65,557.00.

18      Defendants presumably derived these amounts by multiplying each timekeeper's

19  allegedly unreasonable hours by the hourly rated suggested by Plaintiffs for that timekeeper,

20  then totaling the amounts for all timekeepers in a category.  Although Defendants suggest a

21  total dollar amount for each category by which the Court should reduce the fee award, they

22  do not furnish the basis for the calculations.  Defendants' suggested reductions assume that

23  the Court will accept Plaintiffs' proffered hourly rates.  Because Defendants have not provided

24  the total number of hours by which the Court should reduce each timekeeper's entries per

25  category, the Court does not have the data to do a simple re-calculation if the Court does not

26  accept Plaintiffs' suggested hourly rates.  Without the hourly data, the Court would have to:

27  (1) determine which particular time entries were inappropriate; (2) total those according to

28  color code; (3) make a subtotal according to timekeeper in each category; (4) apply the Court's

1    prevailing rate per timekeeper to all unreasonable entries; and (5) subtract the product from
2    the fee award.  For reasons that will follow, this is not practical.

3         Plaintiffs' first motion for fees alone has 478 pages of time entries, averaging 30 entries
4    per page, for an estimated total of 14,340 time entries.  Defendants have challenged
5    approximately one-third of these entries, or an estimated total of 4,780.  If each entry received
6    a minute of the Court's attention, it would take 80 hours  - two solid work weeks - just to
7    review the time entries.  This two-week period does not contemplate time spent comparing
8    the entries to work of other timekeepers, comparing entries to issues in the case, and doing
9    the various necessary calculations.

10        Although Defendants have criticized Plaintiffs for billing too much time to this case,
11   Defendants have not suggested what amount of hours would have been reasonable.
12   Defendants suggest that the Court can discount an entire time entry if a timekeeping error or
13   slight duplication exists in the entry.  The Court disagrees.  So, while Defendants have
14   expended great effort in discounting Plaintiffs' claims, the Court is still left with, not an
15   impossible task, but an unrealistic one.

16        The amount of time an entry-by-entry analysis would exact from finite judicial
17   resources is substantial and out of proportion to the end to be achieved.  *See Gates v.*
18   *Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) ("Despite the concise but clear requirement,
19   in cases where a voluminous fee application is filed in exercising its billing judgment the
20   district court is not required to set forth an hour-by-hour analysis of the fee request.") (internal
21   quotations omitted) .  The Court declines to proceed in such a manner.  The Court must devise
22   a more realistic approach to assessing the reasonableness of fees in this case.

23        The Court will first look at the fee request against the backdrop of the litigation.  "The
24   trial judge should weigh the hours claimed against his own knowledge, experience, and
25   expertise of the time required to complete similar activities."  *Johnson v. Georgia Highway*
26   *Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard*
27   *v. Bergeron*, 489 U.S. 87, 90 (1989); *see also Ass'n for Retarded Citizens of Connecticut, Inc.*
28   *v. Thorne*, 68 F.3d 547, 554 (2[d] Cir. 1995) ("a judge may rely in part on [his] own knowledge

of private firm hourly rates in the community.") (internal quotations omitted).  Plaintiffs claim 14,913 hours of lawyer and legal assistant time.  Of this total, lawyers recorded 8,688 hours on the case; paralegals and legal assistants recorded 6,225 hours.  Defendants argue that nearly 15,000 is an excessive amount considering the nature of the litigation.  Interestingly, Defendants do not disclose the total number of hours their counsel and paralegals spent in defense of the case.

Defendants point out that a year has only 8760 hours – the apparent implication being that this number equals one timekeeper working 24 hours a day for nearly a year and a half. This reference has limited usefulness.  If one assumes that a lawyer bills eight hours per day, or 40 hours per week, this would amount to 2000 hours over 50 weeks – a typical work year. Plaintiffs' counsels' timekeeping records start on 12/21/01; the trial concluded in March 2006. This case spanned a period of over 4 years.  This means the hours claimed by Plaintiffs would equal roughly one lawyer working full time on this case since its inception.

If it were otherwise efficient to have only one lawyer working full time on it, can it be said that this case would not warrant that amount of time and degree of attention?  The Court has no hesitation in answering that question in the negative.  Having presided over a case of this complexity, difficulty, contentiousness, duration, and sheer volume, it seems perfectly reasonable that this case would justify that quantity of lawyer time.

What about the time spent by paralegals and legal assistants?  The ratio of 8,688 lawyer hours to 6,225 paralegal/legal assistant hours is 1.4 to 1.  This ratio does not seem unreasonable.  But, as the Court will discuss elsewhere in this Order, the rates suggested are too high.  The Court will reduce indirectly the claim for paralegal/legal assistant hours by lowering the rates requested for those timekeepers.

Let's add to our back drop.  The Final Pretrial Order numbered 415 pages.  It outlined 127 issues of law and fact for trial.  The parties listed 167 potential witnesses and 771 exhibits.  The Court had earlier considered, entertained arguments on, and decided numerous dispositive motions.  Some Defendants also took interlocutory appeals.  Defendants removed

the case to federal court on August 29, 2002.  Trial started January 31, 2006 and lasted over seven weeks.  As of March 12, 2007, the docket sheet contained 818 entries.

An attorneys' fees claim of $2,871,252 and non-taxable expense claim of $323,482 are not patently out of proportion to the case the Court has just described.  The Court presided over the events recorded in the docket, the seven week trial, and the extensive post-trial motions.  Again, the sheer total number of hours expended does not appear unreasonable.  Obviously, this is a starting point for and not the end of the inquiry.

Defendants challenge the adequacy of Plaintiffs' timekeeping.  Plaintiffs "block billed" their time.  They entered a total amount of hours for each day with task descriptions.  After the fact, in order to make their fee application, Plaintiffs' counsel endeavored to ascribe an amount of time to each discreet task within an entry.  In some instances, the total of described tasks does not equal the original hour total for the day.  Where these errors occur, Defendants urge the Court to reject the entire entry on the basis that Plaintiffs failed to carry their burden of proof.  Defendants further argue the Court should view the entire fee application warily given these mistakes.  The existence of this type of error does not surprise the Court given the immensity of the task facing both sides.  These errors, in the context of the billing statements submitted, do not define the overall quality or accuracy of the application.  The Court will not completely discount all entries containing such errors, but, instead, as noted later in the Order, will apply a reduction that takes into consideration this type of error.

With no sense of nostalgia, the undersigned judge notes that he spent his early years of practice struggling to learn the art and science of timekeeping.  Then, over the course of his 33 years in practice, he spent considerable time struggling to teach younger lawyers this same art and science.  He has also dealt with clients and clients' third party auditing firms and responded to their criticisms of the bills - including criticisms regarding the adequacy of the descriptions, the appropriateness of time spent on individual tasks, and the appropriateness of the total bill for the case.  This experience, coupled with over six years on the bench dealing with fee applications, causes the Court to conclude that Plaintiffs used an excellent billing system.  The Court finds the task descriptions appropriate and sufficiently specific.

1    True, some descriptions could have been more explicit, but no time entry can be
2    comprehensively descriptive without the invoice becoming unwieldy.

3            Defendants further challenge Plaintiffs' fee application because 26 timekeepers worked
4    on the case, which Defendants claim necessarily involves duplication of effort and
5    inefficiencies.  Plaintiffs' counter that they staffed this case appropriately and took advantage
6    of specialties within the firm.  Plaintiffs' counsel also notes that firms of its size inevitably
7    experience turnover.  Both parties make good points.  Undoubtably, the more timekeepers a
8    firm has working on a case, the higher the likelihood of duplication of effort and wasted time.
9    More time will be spent bringing new timekeepers "up to speed;" and more time will be
10   needed to supervise and coordinate the large trial group.  On the other hand, litigation of this
11   magnitude, complexity, and challenge, demands the resources of a well staffed, well financed,
12   and well organized group of experienced and sophisticated lawyers and paralegals/legal
13   assistants.  The Court cannot say whether Plaintiffs needed 26 timekeepers for this case, but
14   the Court will not criticize that number.  The Court, however, will take into account these
15   inefficiencies in its fee award.

16           The Court will now determine the lode star amount.  As stated earlier in this Order, a
17   court determines the lodestar amount by multiplying the number of hours Plaintiffs reasonably
18   expended on the case by a reasonable hourly rate. *Ballen v. City of Redmond*, 466 F.3d at 746.
19   Under 42 U.S.C. §1988, a reasonable hourly rate is "calculated according to the prevailing
20   market rates in the relevant community, regardless of whether plaintiff is represented by
21   private or nonprofit counsel." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (quoting
22   *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  Plaintiffs have the burden of producing evidence
23   that the rates requested "are in line with those prevailing in the community for similar services
24   by lawyers of reasonably comparable skill, experience, and reputation." *Sorenson*, 239 F.3d
25   at 1145.

26

27

28

1    In their fee application, Plaintiffs have listed the following current[2] hourly rates for
2  timekeepers who worked on this case: Michael Manning - $445; Leslie O'Hara - $230; Sean
3  Berberian - $220; and Carrie Brennan - $215.  These four timekeepers billed approximately
4  75% of the lawyer time on this case.  Mr. Manning, Ms. O'Hara, and Mr. Berberian served
5  as trial counsel and made most, if not all, the court appearances (according to the recollection
6  of the undersigned).  The timekeepers who billed the remaining 2196 hours of lawyer time
7  have current hourly rates ranging from $155 to $320 per hour.

8    Plaintiffs contend their current rates are consistent with the prevailing community rates.
9  In support, they cite the affidavit of lead counsel, Michael Manning, and, to a more limited
10  extent, *Economics of Law Practice, 2004*, a report cited by Defendants and prepared by the
11  State Bar of Arizona.  Plaintiffs primarily distinguish the State Bar of Arizona's report rather
12  than rely on it.  Plaintiffs have not provided affidavits from other lawyers who might attest
13  to the prevailing community rates.  To meet their burden of demonstrating prevailing rates,
14  Plaintiffs must produce satisfactory evidence in addition to their attorney's own affidavit.
15  *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005)(quoting *Blum v. Stenson*, 465 U.S. 886, 896
16  n.11 (1984)).  Plaintiffs have not met their burden.  The Court therefore also will consider its
17  own knowledge and experience and Defendants' suggested rates.

18    Defendants submitted the *Economics of Law Practice, 2004*, with their challenge to
19  the fee request.  They reference the report's $255 per hour rate in the "civil rights" category.
20  This case certainly falls under the "civil rights" category; but it is also a wrongful death case,
21  for which the report's rate is $300; and falls into the category of Municipal/Public Entity Law,
22  for which the report's rate is $350.  The case took on the complications of a heavy document
23  commercial litigation case, for which the report gives no rate.  The report quotes rates of $300
24  for plaintiffs lawyers prosecuting a medical malpractice case.[3]  This case called for skills at

25

26  _____

27    [2]Current as of the date Plaintiffs filed their memorandum in support of attorneys' fees.

28    [3]The report rates quoted in this Order are from the 95th percentile.

Case 2:02-cv-01686-JAT   Document 820   Filed 03/30/07   Page 10 of 22

least on a par with a medical malpractice case.  Obviously, reports of this type are helpful, but must be viewed with some circumspection.

Defendants also favor the Court with rates some of their counsel charged.  For example, lead counsel for one of the Defendants charges $170 per hour, while counsel for another Defendant charges $185 per hour.  They bill out associates at $110 per hour.

Taking into account what the parties have furnished and its own knowledge and experience, the Court concludes the current[4] prevailing rate in the community for senior trial lawyers handling large, complex litigation is between $300 and $400 per hour.  (The Court notes, however, that there are a number of outstanding trial lawyers in this community who charge below this range, including defense counsel in this case.)

The Court will separately address the prevailing rate for Plaintiffs' lead counsel, Michael Manning.  Mr. Manning brought to the case extraordinary qualifications, including a national reputation for handling large, difficult, and complex cases.  His demonstrated abilities in this case matched that reputation.  Mr. Manning previously had handled at least one case, very similar to the instant case, to a seemingly outstanding result.  His learning curve therefore was not as steep as it might have been for another lawyer.  He clearly used that prior knowledge and experience, coupled with thorough preparation, to the advantage of the Agsters.  He faced multiple challenges including a very experienced defense team that vigorously and ably defended the case at every stage.

Plaintiffs' counsel took on a challenging client.  Mr. Agster, the deceased Plaintiff was brought to the jail high on methamphetamine.  He came with him a sad history of life's failures, diminished mental acuity, addiction, and other challenges.  While the Court has sympathy for the decedent's personal plight and that of his family, as a plaintiff, the decedent presented significant challenges to Plaintiffs' counsel.  Mr. Manning very skillfully turned those into advantages.

---

[4]The Court uses current billing rates to compensate for the delay in receiving payment. *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003).

- 10 -

1      Plaintiffs' counsel faced further obstacles.  The Defendants were in law enforcement.

2  Defense counsel ably portrayed the dangers officers face and the thanklessness of their jobs.

3  Plaintiffs had to overcome the inherent sympathy in favor of law enforcement.  Defense

4  counsel produced well-prepared and highly credentialed experts the cross examination of

5  whom required great skill and preparation.   The outcome of this trial was by no means

6  predictable.  Suffice it to say, Plaintiffs' victory resulted in no small measure from the

7  generalship of Mr. Manning and his and his colleagues' lawyering.  The Court therefore

8  concludes that the hourly rate for Mr. Manning should be $400 per hour, the top of the

9  prevailing rate range.

10      The Court next addresses the hourly rates for Ms. O'Hara, Mr. Berberian, and Ms.

11  Brennan. While each of these lawyers brings to the table special qualifications, the Court will

12  apply the same hourly senior associate/junior partner rate to all three.  As previously noted,

13  associates for one defense counsel are billed at $110 per hour.  The Arizona State Bar report

14  lists the median charge for associates in firms over eight lawyers at $180 per hour.  The

15  Plaintiffs urge rates between $225 to $350.  The Court determines a reasonable rate for Ms.

16  O'Hara, Mr. Berberian, and Ms. Brennan is $180 per hour.

17      For the remaining lawyer timekeepers, the Court determines that a rate of $160 per

18  hour is appropriate.  The Court finds that only a finite amount of work requires lawyers in the

19  senior associate or junior partner category.  Associates at a lower rate should perform the

20  remainder of the work.  In making this determination, the Court does not overlook the

21  possibility that a particular lawyer in the firm, whose expertise justifies a higher rate, may

22  have been brought into the case for a narrow issue requiring that expertise.  The Court will

23  leave it to Plaintiffs' counsel to account for such differences through intra-firm profit

24  distribution.

25      Last, the Court must select a reasonable hourly rate for the many paralegals and legal

26  assistants who worked on the case.  Plaintiffs seek rates ranging from $70.00 to $176.88.  The

27  Arizona State Bar report reflects median rates ranging from $75 for new legal assistants to

28  $90 for those with ten or more years of experience.  Defendants billed their paralegals at a rate

1    of $70 per hour.  They claim that the prevailing rate is between $65 and $90 per hour.  The

2    Court concludes that 80% of the reasonable hours expended by Plaintiffs' paralegals and legal

3    assistants should be billed at a rate of $110; and the other 20% at $70.  The Court finds that

4    these rates more closely approximate the prevailing rates in this community.

5          The Court has determined the reasonable hourly rates for Plaintiffs' many timekeepers.

6    To reach the lodestar amount, the Court must now take those rates and multiply them by the

7    hours Plaintiffs' legal team reasonably spent on the case.  Defendants have suggested several

8    reasons, organized by category, for reducing the amount of Plaintiffs' hours.  The Court has

9    considered both parties' arguments and will reduce Plaintiffs' total hours for only three

10   reasons.

11         Plaintiffs included in their fee request hours spent by timekeepers with Dr. Burstein.

12   Dr. Burstein's expert services related exclusively to Mr. and Mrs. Agster's federal civil rights

13   claims.  Plaintiffs did not prevail on those claims.  Defendants argue the Court should exclude

14   $9,717.50 for all time associated with Dr. Burstein.  Plaintiffs concede that they should not

15   receive any fees for time associated with Dr. Burstein.

16         Plaintiffs, by failing to remove these hours from their application in the first instance,

17   and Defendants, by suggesting a dollar reduction rather than an hourly reduction, left the

18   Court with the unenviable task of combing through 478 pages of billing sheets to find entries

19   related to Dr. Burstein.  The Court had to identify the hours spent by different timekeepers

20   associated with Dr. Burstein (the Court used the find function in the pdf document), then

21   multiply those hours by the appropriate rate, and then reach a total for all timekeepers.  As a

22   result of that effort, the Court will deduct the following hours per timekeeper for tasks

23   associated with Dr. Burstein: Mr. Manning - 7.4 hours; Mr. Berberian - 16.1 hours; Ms.

24   Brennan - 4.8 hours; Paralegals/Legal Assistants - 34.8 hours.

25         The Court will further reduce the amount of hours requested for time spent by Plaintiffs

26   dealing with the media.  The Court agrees with Defendants that an award of attorneys' fees

27   should not include amounts for contact with the media.  *See Gates v. Gomez*, 60 F.3d 525, 535

28   (9th Cir. 1995).  After another review of the billing sheets (using the find function and key

words like press, media, newspaper, radio, etc.) and another set of calculations, the Court has determined that Plaintiffs' timekeepers spent the following hours on tasks relating to media contact:[5] Mr. Manning - 21.7 hours; Mr. Berberian - .3 hours; Ms. Brennan - 2.2 hours; Ms. O'Hara - .2 hours; and Paralegals/Legal Assistants - 5.8 hours.  The Court will subtract those hours from the fee award.

Finally, the Court will make reductions from the hourly totals for certain timekeepers because of duplication of effort, turnover of staff, and the inefficiencies inherent in utilizing so many timekeepers.  After review of the billing records, for the aforementioned reasons, the Court will subtract 227.4 hours from the time total for all attorneys other than Mr. Manning, Ms. O'Hara, Mr. Berberian, and Ms. Brennan.  For the same reasons, the Court will deduct another 933.82 hours from the time total for the 15 paralegals/legal assistants who worked on the case.   The Court will not make any of the other reductions in hours suggested by Defendants.

The Court has determined the reasonable rates and reasonable hours for this case and can now calculate the lodestar amount.  The Court will award 1465.4 hours, after reductions for time spent on Dr. Burstein and with the media, for time expended by Mr. Manning at a rate of $400 per hour for a total of $586,160.  The Court awards 4973.7 hours, after reductions for the same reasons, for time expended by Ms. O'Hara, Mr. Berberian, and Ms. Brennan at a rate of $180 per hour for a total of $895,266.  For all other lawyers, the Court will allow 2,045.2 hours, after reductions for inefficiencies, duplication of effort, etc., at a rate of $160 per hour for a total of $327,232.  The Court has deducted 933.82 hours from the total hours requested for Plaintiffs' paralegals and legal assistants.  The Court will award 80% of the remaining paralegal/legal assistant hours at a rate of $110; and 20% at $70; for a total of $539,750.50.

---

[5]The Court will not reduce the award for time spent by Plaintiffs tracking Sheriff Arpaio's contacts with the media.

1    That brings the lodestar total to $2,348,408.50. Defendants invite us to reduce the
2    lodestar because of Plaintiffs' limited success. The Court does not agree with Defendants'
3    characterization of a nearly $4 million recovery in the face of many challenges, including
4    excellent defense work, as a "limited success." The Court will not make a downward
5    adjustment to the lodestar. District courts should make upward or downward adjustments to
6    the presumptively reasonable lodestar only in "rare" cases. *See Gates*, 987 F.2d at 1402. But
7    the Court will reduce the fee amount by $8,511.00 for fees already received.

8    Plaintiffs' total fee award for the first motion for attorneys' fees is $2,339,897.50.

9    **C.    Non-taxable Expenses**

10    Under 42 U.S.C. §1988, a prevailing party may recover as part of the attorneys' fees
11    award out-of-pocket expenses that attorneys normally charge to fee paying clients. *Dang*, 422
12    F.3d at 814. The requested expenses must be reasonable. *Harris v. Marhoefer*, 24 F.3d 16,
13    20 (9th Cir. 1994). Plaintiffs seek $323,482.08 in non-taxable costs and expenses. The
14    Maricopa Sheriffs Defendants and the MCCH Defendants both contest virtually all of
15    Plaintiffs' requested expenses.

16    **1.    Meals**

17    The Maricopa Sheriffs Defendants argue the Court should deduct $2,745.92 from the
18    expense request because Defendants should not have to pay for Plaintiffs' counsels' meals.
19    They do not argue the amount itself is unreasonable. The MCCH Defendants do not dispute
20    the request. The Court will award the full $2,745.92 to Plaintiffs for meals. *See Harris*, 24
21    F.3d at 19-20 (affirming award of expenses for service of summons and complaint, service
22    of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs,
23    hotel bills, *meals*, messenger service, and employment record reproduction) (emphasis added).

24    **2.    Videotaping Depositions**

25    The Maricopa Sheriffs Defendants also contest Plaintiffs' request for costs relating to
26    videotaping depositions, citing a 7th Circuit case, but do not claim the amount is unreasonable.
27    Plaintiffs counter by citing a 10th Circuit case allowing recovery of both video and

28

1  stenographic recording.  In absence of a 9th Circuit decision on point,[6] the Court will defer to
2  the general rule allowing recovery of costs that attorneys normally bill to fee paying clients.
3  The Court finds that the cost of videotaping a deposition is a fee for which an attorney would
4  normally bill a client.  The Court therefore will award Plaintiffs their videotaping expenses.

5  **3.     Copying Expenses**

6  Plaintiffs seek copying expenses of $13,744.19 for copies from IKON and $41,572.15
7  for in-house copies.  Copying costs are recoverable under 42 U.S.C. §1988 as non-taxable
8  costs.  *Harris*, 24 F.3d at 19-20.  The MCCH Defendants nonetheless argue the Court should
9  disallow these expenses because Plaintiffs' supporting documentation does not demonstrate
10  that counsel incurred the expenses for this case.[7]

11  In their reply in support of their fee application, Plaintiffs' counsel explained that its
12  normal business practice and internal system require that each copy made be manually
13  assigned a case number.  The firm's policy dictates that only copies related to this case utilize
14  the Agster number.  The Court does not doubt this statement.  Plaintiffs' counsel argue that
15  it would be unduly burdensome to require users to type in a description of each copied
16  document. The Court agrees.  This case generated volumes upon volumes of pages from
17  discovery through trial and afterward.  The Court finds Plaintiffs' request reasonable and will
18  award the full amount of copying expenses.

19  **4.     Legal Research**

20

21

_____

22  [6]An unpublished 9th Circuit opinion appears to support the Court's award of non-
23  taxable costs for videotaping depositions.  *Williams v. Rockwell Intern. Corp.*, 1997 WL
24  306456, *3 (9th Cir. 1997) ("[Plaintiff] argues that the defendants should have pursued a more
     efficient discovery strategy . . ., and he objects in particular to the cost of $945 for
25  videotaping depositions. We uphold the award of costs as Williams doesn't show that the
     district court's award is based on an inaccurate view of the law or a clearly erroneous finding
26  of fact."(internal quotations omitted).

27  [7]In the alternative, the MCCH Defendants ask the Court to reduce the amount of total
28  copies and not award anything beyond 10 cents per copy.  The Court declines to do so.

1    Only the Maricopa Sheriffs Defendants contest Plaintiffs' request for computer-assisted
2  legal research expenses.  They argue that Local Rule 54.2(e)(2)(B) allows recompense for
3  legal research only when the requestor identifies the issue researched.  They claim that
4  Plaintiffs failed to adequately document their research expenses.

5    Local Rule 54.2(e)(2)(B) addresses hourly timekeeper entries for legal research, not
6  recovery of fees charged by Westlaw or Lexis-Nexis.  Local Rule 54.2(e)(3) is the pertinent
7  rule for this determination.  That rule requires attorneys to identify each non-taxable cost with
8  particularity.  Plaintiffs have met the requirements of both rules.  Plaintiffs' counsel submitted
9  timekeeper entries that identify the legal issue researched.  They also have presented
10  adequately detailed entries regarding electronic legal research costs.  The Court will award
11  Plaintiffs the requested amounts for Westlaw and Lexis-Nexis research.

12    **5.    Fax charges, cab fare, messenger services, long distance phone charges,**
13        **cell phone charges, mileage, postage, Pacer, and parking**

14    The Maricopa Sheriffs Defendants object to several categories of expenses totaling
15  $64,616.55, not because the expenses are not allowed under 42 U.S.C. §1988, but because
16  they allege Plaintiffs have not adequately documented the expenses.  The Court disagrees.
17  Plaintiffs have provided the Court with hundreds of pages of detailed documentation
18  supporting their expenses.  The Court finds this documentation adequate, except for the
19  $6,000 worth of expenses for which Plaintiffs concede they have not submitted
20  documentation.  The Court therefore will reduce the overall award of expenses by $6,000.

21    **6.    Expert Fees**

22    Plaintiffs have requested $128,722.59 for expert witness fees and expenses.
23  Defendants contest the recoverability of these expenses.  In *West Virginia Univ. Hosp. Inc.*
24  *v. Casey*, 499 U.S. 83, 102 (1991), the Supreme Court concluded that 42 U.S.C. §1988
25  conveys no authority to shift expert fees in civil rights cases to the losing party.  Prevailing
26  parties therefore cannot recover more than the witness fee provided in 28 U.S.C. §§1920 and
27  1821 for testifying experts and can recover nothing for services rendered by experts in a non-
28  testimonial capacity.  *Gates*, 987 F.2d at 1407.

After *Casey*, Congress amended §1988 to specifically provide for the recovery of expert fees in cases brought to enforce a provision of 42 U.S.C. §1981 or 1981a.  42 U.S.C. §1988(c); *Padro v. Commonwealth of Puerto Rico*, 100 F.Supp.2d 99, 109 (D. Puerto Rico 2000).  Congress could have amended §1988 to allow for expert fees in all cases covered by §1988(b), but did not.  The *Casey* decision therefore stands with regard to §1983 cases. *See Jenkins v. State of Missouri*, 158 F.3d 980, 983 (8th Cir. 1998).  The Court finds unpersuasive any authority to the contrary cited by Plaintiffs.[8]  Because Plaintiffs pursued §1983 claims, they cannot shift the burden of their experts' fees to Defendants. Plaintiffs are entitled only to the statutory per diem witness fee for each testifying expert.[9]

Plaintiffs can also recover expenses associated with deposing Defendants' expert witnesses.  *Harris*, 24 F.3d at 20.  The MCCH Defendants have provided the Court with a chart (Ex. D to Doc. # 719) that they claim gives the total amounts spent by Plaintiffs in deposing the Defendants' experts.  Plaintiffs did not dispute these amounts in their reply.  Therefore, for the purposes of this Order, the Court will assume the accuracy of the totals in the chart and award the Plaintiffs $6115 for costs associated with deposing the defense experts.  Plaintiffs' request for the remaining $122,607.59 in expert fees is denied.

---

[8]Plaintiffs claim that *Gametech Intern., Inc. v. Trend Gaming Sys., L.L.C.*, 380 F.Supp.2d 1084, 1102 (D. Ariz. 2005) stands for the proposition that they can recover expert fees.  *Gametech* does not stand for that proposition.  Rather, the *Gametech* court held that the prevailing party could recover *attorneys fees* for the hours an attorney spent with an consulting expert.  The *Gametech* court did not hold the prevailing party could recover fees paid to the consulting expert.

[9]The Court, at this time, cannot make an award for per diem testimony because Plaintiff has not provided the Court with the number of days (including travel time to and from) each  Plaintiffs' expert testified at trial.

- 17 -

1     The Court will reduce Plaintiffs' non-taxable cost request by $6,000.00 for lack of

2   documentation and by $122,607.59 for non-compensable expert fees.  The Court awards

3   Plaintiffs $194,874.49 in non-taxable costs.[10]

4     In total, the Court awards Plaintiffs $2,339,897.50 in fees and $194,874.49 in non-

5   taxable costs in connection with their First Motion for Attorneys Fees and Non-Taxable Costs

6   (Doc. #662).

7   **III.   SECOND MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE**

8   **COSTS**

9     On August 23, 2006, Plaintiffs filed a second motion for attorneys' fees and non-

10  taxable costs seeking an additional award of $69,272.50 in attorneys' fees for the period of

11  April 18, 2006 to July 31, 2006.  (Doc. #792).  Plaintiffs also requested $10,248.55 for non-

12  taxable costs paid or incurred after April 18, and $11,462.35 for the Billed Costs not taxed by

13  the Clerk of the Court.  The Maricopa Sheriffs Defendants filed a motion to strike Plaintiffs'

14  second motion for non-taxable costs (Doc. #796).  The MCCH Defendants joined in that

15  motion (Doc. #797).

16  **A.   ATTORNEYS' FEES**

17    The same standards and principals outlined in the portion of the Order addressing

18  Plaintiffs' first motion for attorneys' fees apply here.  A prevailing plaintiff in a federal civil

19  rights action is entitled to  attorneys' fees.  *Hensley*, 461 U.S. at 429.  Defendants do not

20  dispute that Plaintiffs can recover fees for reasonable time spent preparing and defending their

21  fee applications and reasonable time spent working on post-trial motions.  The Court will use

22  the lodestar method to determine the amount of supplemental fees.  *Ballen v. City of*

23  *Redmond*, 466 at 746.

24    The Court has established the following current hourly rates for Plaintiffs' timekeepers:

25  Mr. Manning - $400; Ms. O'Hara and Mr. Berberian - $180; all remaining lawyers - $160; and

26

27    [10]Again, because of lack of information, this amount does not include the allowable

28  per diem witness fee for Plaintiffs' testifying experts.

paralegals/legal assistants - 80% at $110 and 20% at $70.  The Court will multiply those rates by the reasonable hours expended by Plaintiffs on the fee application and post-trial motions. Because Plaintiffs did not use as many timekeepers during the post-trial period, the Court will not make a reduction in hours for duplication of effort and inherent inefficiencies.

But the Court will reduce the fee request by hours spent on post-trial media contact. The Court will deduct 1.4 hours from Mr. Manning's total and .3 hours from Ms. Slawson's for media contacts.  The Court will deduct another .4 hours from Ms. Slawson's total for time spent discussing tax issues with the Agsters.

Although Defendants have not suggested it, the Court will reduce the award further for time spent defending the Maricopa Sheriffs Defendants' motion for remittitur.  Plaintiffs did not prevail on this very important post-trial motion.  The Court reduced the Estate's §1983 compensatory damage award from $6,000,000.00 to $1,000,009.00.  Plaintiffs should not recover fees for time spent defending the motion for remittitur. *Lambert v. Ackerley*, 180 F.3d 997, 1012-13 (9th Cir. 1999) ("Parties are entitled to fees only for work related to issues on which they prevail, and here the plaintiffs failed to prevail on an extremely important post-trial issue - the remittitur with respect to punitive damages.").

From the time entries attached to Plaintiffs' second motion, it appears Mr. Berberian drafted Plaintiffs' response to the remittitur portion of the Maricopa Sheriffs Defendants' Motion to Alter or Amend Judgment and for Remittitur/New trial (Doc. #665); while Ms. O'Hara drafted the response to the new trial portion.  Mr. Palmer apparently supported Mr. Berberian's efforts by doing research and drafting memos on verdict amounts in §1983 cases. Plaintiffs prevailed on the motion for new trial, but lost the motion for remittitur.

Mr. Berberian spent 32.2 hours in defending the motion for remittitur.  Because the Court cannot say with absolute certainty that he devoted none of that time to the new trial portion of the motion, the Court will subtract only 20 hours from his hourly totals.  The Court will deduct the entire 12.4 hours Mr. Palmer spent researching issues relating to the amount of the verdict.  The Court will also deduct 1.3 hours Mr. Manning spent reviewing Mr. Berberian's work on the motion for remittitur.

After making the foregoing adjustments to Plaintiffs' hours, the Court will award: 33.2 hours for time expended by Mr. Manning at a rate of $400 per hour for a total of $13,280; 37.2 hours for time expended by Ms. O'Hara at a rate of $180 per hour for a total of $6696; 84.1 hours for time expended by Mr. Berberian at a rate of $180 per hour for a total of $15,138; 5.3 hours expended by Mr. Palmer at a rate of $160 per hour for a total of $848; 48 hours expended by all other lawyers at a rate of $160 per hour for a total of $7680; and, for hours expended by paralegals/legal assistants, 80% of 53.6 hours at a rate of $110 per hour and the remaining 20% of those hours at a rate of $70 for a total of $5467.20.  That brings the lodestar total to $49,109.20.  The Court will not make a downward adjustment to that total.

## B.    NON-TAXABLE COSTS

As previously stated, a prevailing party may recover as part of the attorneys' fees award out-of-pocket expenses that attorneys normally charge to fee paying clients. *Dang*, 422 F.3d at 814.  Plaintiffs seek an additional $10,248.55 for expenses paid or incurred after April 18, plus the $11,462.35 of Billed Costs not taxed by the Clerk of the Court.  Defendants join in moving to strike the motion for the $11,462.35 of costs not taxed by the Clerk.

The Court has reviewed the request for $10,248.55 in non-taxable expenses and finds it reasonable.  Plaintiffs adequately have supported this request with detailed documentation. Defendants have made the same objections to many of the expenses that they made in response to Plaintiffs' first motion for non-taxable expenses.  The Court has considered Defendants' objections and rejects those arguments for the reasons previously outlined in this Order.

Defendants have moved to strike Plaintiffs' request for the $11,462.35 of costs not taxed by the Clerk.  Defendants argue we should strike that request as untimely and because the Clerk already has rejected that amount.  The Court denies the motions to strike and will award the $11,462.35 as additional non-taxable expenses.

Plaintiffs filed their original bill of costs within the time allowed by the rules.  In their Reply in Support of the Memorandum of Bill of Costs, Plaintiffs specifically requested that the Court allow them to recover, as non-taxable costs, any costs not taxed by the Clerk (Doc.

1   #731, at 9).  Plaintiffs renewed this request in their second motion for attorneys' fees and
2   expenses.  Plaintiffs therefore preserved the issue.

3        Plaintiffs also timely filed their first motion for attorneys fees and non-taxable
4   expenses.  Their second motion merely supplements the original, timely motion.  The Court
5   therefore holds that Plaintiffs made a timely request for the $11,462.35 claim.

6        Defendants argue that the Court should reject the $11,462.35 in costs because the Clerk
7   did.  But prevailing parties may recover out-of-pocket expenses normally billed to paying
8   clients, even if those expenses are greater than the taxable costs.  *Harris*, 24 F.3d at 20.  The
9   Court finds that the costs rejected by the Clerk are the type attorneys normally bill their
10  clients.  Just because the Clerk rejected them as taxable costs, does not mean the Court cannot
11  award them as out-of-pocket expenses under §1988.

12  ## IV.    APPORTIONMENT

13       Plaintiffs and the Maricopa Sheriffs Defendants ask the Court to hold Defendants
14  jointly and severally liable for the attorneys' fees award.  The MCCH Defendants argue that
15  the Court should apportion 66.66% of the liability for the fees to the Maricopa Sheriffs
16  Defendants and 33.34% to the MCCH Defendants.  To support their argument, the MCCH
17  Defendants claim that Plaintiffs deposed more "Maricopa Sheriffs Defendants" witnesses than
18  "MCCH" witnesses.  Similarly, the MCCH Defendants argue that more witnesses at trial were
19  "Maricopa Sheriffs Defendants" witnesses than MCCH witnesses.

20       The MCCH Defendants cite several cases in which the Ninth Circuit apportioned fees
21  among defendants.  But, as the Maricopa Sheriffs Defendants argue, those cases all involved
22  Plaintiffs who targeted certain defendants.  Apportionment is proper where a plaintiff has
23  spent a disproportional amount of time pursuing a certain defendant or defendants.  *See*
24  *Corder v. Gates*, 947 F.2d 374, 383 (9th Cir. 1991) ("[W]e have prescribed apportionment of
25  attorney's fees when the time expended by the plaintiff in pursuing each defendant was
26  grossly unequal.").  Plaintiffs here pursued the Maricopa Sheriffs Defendants and the MCCH
27  Defendants with equal vigor.  The Court therefore will not apportion fees.  All Defendants are
28  jointly and severally liable for the attorneys' fees award.

1    Accordingly,

2    IT IS ORDERED GRANTING Plaintiffs' Motion for Attorneys Fees and Non-Taxable

3    Costs (Doc. #662) and Second Motion for Attorneys Fees (Doc. #791) for a total award of

4    $2,389,006.70 in attorneys' fees and $216,585.39 in non-taxable expenses.

5    IT IS FURTHER ORDERED DENYING Maricopa County and the Maricopa Sheriff

6    Defendants' Motion to Strike Second Motion for Attorneys Fees (Doc. #796) and Defendants

7    Maricopa County and Maricopa County Correctional Health's Motion to Strike Second

8    Motion for Attorneys Fees (Doc. #797).

9    DATED this 29th day of March, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22    _____
                James A. Teilborg
23            United States District Judge

24

25

26

27

28

- 22 -